## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

Jeremy Anderson (K-92896),    )
                             )
            Plaintiff,    )
                             )    Case No. 23 C 1619
        v.           )
                             )    Hon. Georgia N. Alexakis
Doctor Bautista, et al.,     )
                             )
        Defendants.    )

## MEMORANDUM OPINION AND ORDER

State prisoner Jeremy Anderson brings this *pro se* civil rights action, 42 U.S.C. § 1983, alleging that Dr. Catalino Bautista was deliberately indifferent to his lower back pain. Plaintiff also is proceeding on state-law medical negligence claims against Dr. Bautista and Wexford Health Sources, Inc. Defendants have moved for summary judgment as to all claims. For the reasons that follow, the motion is granted. [67].

## BACKGROUND

### A. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported

by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must respond to the movant's proposed statements of fact. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). A response may not set forth new facts that are not responsive to the asserted fact, or assert legal arguments. LR 56.1(e)(2). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

Because plaintiff is proceeding *pro se*, defendants served him with a Local Rule 56.2 Notice to Unrepresented Litigants Opposing Summary Judgment. [70]. Plaintiff responded by submitting a document titled "Motion for Summary Judgment," [71], which does not appear to be a motion for summary judgment,[1] but rather an attempt to state additional facts that includes legal argument and various exhibits. Plaintiff also submitted a document titled "Summary Judgment Pursuant to Federal Rule of

---

[1] To the extent that Plaintiff did intend this document to be a motion for summary judgment, denial would nonetheless be appropriate as the motion does not meet the requirements of Fed. R. Civ. P. 56 or LR 56.1.

Civil Procedure 56," [72], which appears to be a memorandum in opposition to Defendants' summary judgment motion.

Because plaintiff has not properly responded to defendants' factual statements, the Court will consider those statements to be true to the extent supported by the record. *Lamz*, 321 F.3d at 683. The Court will entertain plaintiff's factual statements only to the extent they are supported by the record, or to the extent he could properly testify himself about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013).

Nonetheless, plaintiff's failure to strictly comply with Local Rule 56.1 is not a basis for automatically granting defendant's motion. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Rather, the Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The Court will apply these standards in evaluating the evidence.

## B. Relevant Facts[2]

In 2019, plaintiff Jeremy Anderson was a prisoner at Stateville Correctional Center. (Defs.' SOF, Dkt. No. 69, ¶ 1.) Plaintiff was housed at that facility until about March 4, 2021, when he was transferred to Dixon Correctional Center. (*Id.*) Defendant, Dr. Catalino Bautista (misspelled "Batista" in plaintiff's complaint), is a

---

[2] This Court has jurisdiction under 28 U.S.C. § 1331, and venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred at Stateville Correctional Center, which is located within the Northern District of Illinois. (*See* Def.'s SOF, Dkt. No. 69, at ¶ 4.)

licensed medical doctor who was employed by Wexford Health Sources, Inc. until he retired in July 2022. (*Id.* ¶ 2.) Wexford is a private corporation that supplied medical providers to the Illinois Department of Corrections, including Stateville. (*Id.* ¶ 3.)

Plaintiff's claims against Dr. Bautista are related to the doctor's treatment of plaintiff's lower back pain. (*Id.* ¶ 5.) Plaintiff alleges both that Dr. Bautista was deliberately indifferent to his back pain and that he was negligent in his treatment of that pain. (*Id.*) Plaintiff's claim against Wexford is limited to a medical negligence claim as Dr. Bautista's employer. (*Id.* ¶ 6.) Plaintiff is aware that in order to prove his medical malpractice claim against Dr. Bautista, he must provide a report from a physician that supports those allegations. (*Id.* ¶ 7.) At Stateville in 2019, a prisoner could file a grievance by sending it to the grievance office. (*Id.* ¶ 8.)

On or about February 25, 2019, plaintiff fell out of his bunk at Stateville. (*Id.* ¶ 9.) After he fell, plaintiff filed a grievance about that event, which was assigned number 11182. (*Id.* ¶ 10.) This grievance was not marked as received by the grievance department until October 14, 2019. (*Id.* ¶ 11.)

In this grievance, plaintiff complains that after falling out of the top bunk, a "med tech" was called to his unit, and plaintiff was taken to the Healthcare Unit for treatment. (*Id.*) Plaintiff also stated in the grievance that he believed officers with the Illinois Department of Corrections ("IDOC") knew that he was not supposed to be assigned to the top bunk and should have called the Placement Office to confirm. (*Id.* ¶ 12.) This grievance does not complain that plaintiff failed to receive appropriate

4

medical treatment after he fell out of the bunk. (*Id.* ¶ 13.) Neither Dr. Bautista nor Wexford are named in the grievance. (*Id.* ¶ 14.)

After the grievance was reviewed and responded to by the grievance counselor, plaintiff appealed that decision to the Administrative Review Board ("ARB"). (*Id.* ¶ 15.) Once the grievance was received by the ARB, the ARB indicated that it needed additional information in the form of the Grievance Officer's and Chief Administrative Officer's response to the grievance, if timely. (*Id.* ¶ 16.) After receiving the ARB's response, plaintiff filed this lawsuit. (*Id.* ¶ 17.) Plaintiff never filed another grievance relating to the allegations in this complaint. (*Id.* ¶ 18.)

Plaintiff's first visit with Dr. Bautista related to his complaints of back pain was on July 3, 2019. (*Id.* ¶ 19.) At that visit, Dr. Bautista performed a physical examination of plaintiff and determined that he had tenderness to his spinal area. (*Id.* ¶ 20.) Dr. Bautista diagnosed plaintiff with low back pain with sciatica, which is related to the nerves in plaintiff's lower back. (*Id.* ¶ 21.) In response to plaintiff's complaint and the physical examination, Dr. Bautista increased plaintiff's dosage of Robaxin (a muscle relaxer), prescribed him Neurontin (used to treat nerve pain), and wrote a referral for physical therapy. (*Id.* ¶ 22.) Plaintiff was to follow up on September 5, 2019. (*Id.* ¶ 23.) Plaintiff agrees that Dr. Bautista responded to his complaints of pain by increasing his medication dosage. (*Id.* ¶ 24.)

Plaintiff returned to Dr. Bautista earlier than planned on July 22, 2019. (*Id.* ¶ 25.) At that visit, plaintiff complained that the Neurontin was not working, and in response to those complaints, Dr. Bautista increased the dosage. (*Id.* ¶ 26.)

Plaintiff next saw Dr. Bautista on September 12, 2019, to follow up on his complaints of back pain. (*Id.* ¶ 27.) Plaintiff reported at that time that his current dose of Neurontin was not lasting long enough to control the pain. (*Id.* ¶ 28.) There is no documentation in the medical records from this visit indicating that plaintiff requested an MRI. (*Id.* ¶ 29.) Plaintiff agrees that Dr. Bautista listened to his complaints of pain and increased the dosage of his medication to address those complaints. (*Id.* ¶ 30.)

After completing a course of physical therapy, plaintiff returned to Dr. Bautista for a follow-up visit on or around November 19, 2019. (*Id.* ¶ 31; Pl.'s Dep., Dkt. No. 69-4, at 53:15–54:5.) During that visit, Plaintiff reported to Dr. Bautista that the physical therapy had loosened his back. (Dkt. No. 69, ¶ 31.) Plaintiff agrees that Dr. Bautista responded to his complaints of nerve pain by prescribing medications. (*Id.* ¶ 32.)

Plaintiff agrees that after he left Stateville in November 2021, Dr. Bautista no longer had responsibility for treating his lower back pain. (*Id.* ¶ 33.) As of February 2025, when plaintiff was deposed, no specialist had put a formal plan in place for non-conservative treatment of plaintiff's low back pain. (*Id.* ¶ 34.[3]) As of November 2024, after seeing a specialist at another hospital in August 2024, the doctor at Dixon Correctional Center recommended that plaintiff continue to lose weight, continue his medications, and start another round of physical therapy for his back pain. (*Id.* ¶ 35.)

---

[3] Plaintiff testified that doctors have told him that he may need injections or surgery, but "[i]t's up in the air right now." (Pl.'s Dep., Dkt. No. 69-4, at 96:2:9.)

For this part, Dr. Bautista attested that he exercised his independent clinical judgment in assessing, diagnosing, and treating patient complaints, including plaintiff's complaints. (*Id.* ¶ 36.) Before plaintiff's first visit with Dr. Bautista, plaintiff had seen other medical providers at the prison, including a physician assistant and another doctor. (*Id.* ¶ 37.) In these previous visits, plaintiff had been referred to physical therapy on at least two occasions. (*Id.* ¶ 38.)

Dr. Bautista's first visit with plaintiff related to complaints of back pain was on July 3, 2019. (*Id.* ¶ 39.) Upon examination, plaintiff had tenderness in his spine, his straight leg test was slow, and he complained of shooting pain in both legs. (*Id.*) Dr. Bautista stated that when a patient presents with back pain that radiates down the back of the leg, this signifies possible irritation or compression of the nerve root in the lower spine. (*Id.* ¶ 40.) Based on Dr. Bautista's education, training, and experience, prescribing Neurontin for the treatment of plaintiff's sciatica was appropriate and within the standard of care based on plaintiff's complaints and his physical examination on July 3, 2019. (*Id.*)

At Dr. Bautista's next visit with plaintiff, on July 22, 2019, Dr. Bautista addressed plaintiff's complaint about the Neurontin not lasting long enough by increasing the dosage of the medication. (*Id.* ¶ 41.)

Dr. Bautista states that he did not see plaintiff again for complaints of back pain until November 19, 2019.[4]  (*Id.* ¶ 42.) By that time, plaintiff had completed his

---

[4] For reasons that are unclear, Dr. Bautista's declaration does not reference his September 12, 2019 appointment with plaintiff, but it appears based on medical records attached to plaintiff's deposition that Dr. Bautista did treat plaintiff on that date. (*See* Dkt. No. 69-4 at pg. 121.)

course of physical therapy. (*Id.*) At the November 19, 2019 visit, plaintiff reported that the physical therapy had helped to loosen his back, which made his back feel better. (*Id.* ¶ 43.) Plaintiff also had lost about 30 pounds since his last visit. (*Id.*) In Dr. Bautista's opinion, it was not unexpected for plaintiff to experience improvement in his symptoms given the physical therapy and weight loss. (*Id.* ¶ 44.)

On January 27, 2020, plaintiff returned to the Healthcare Unit with complaints that his back was symptomatic between Neurontin doses. (*Id.* ¶ 45.) Dr. Bautista educated plaintiff to take both the Robaxin and Neurontin as directed and to follow up in eight weeks. (*Id.*) The January 2020 visit was plaintiff's last visit with Dr. Bautista in which he complained of back pain. (*Id.* ¶ 46.)

Although plaintiff's amended complaint alleged that he saw Dr. Bautista on January 15, 2021, Dr. Bautista contends that he did not see plaintiff on that date. (*Id.* ¶ 47.) It has always been Dr. Bautista's practice to document any treatment provided for a patient. (*Id.*) Based on this custom and practice, if Dr. Bautista had seen Plaintiff on Jan. 15, 2021, Dr. Bautista maintains that there would have been a progress note drafted and saved in his medical records. (*Id.*)

Dr. Bautista stated that based on his medical judgment, he provided plaintiff with appropriate conservative treatment for his lower back pain. (*Id.* ¶ 48.) Dr. Bautista further stated that it is the standard of care to exhaust conservative treatment possibilities before considering alternative options. (*Id.* ¶ 49.)

Dr. Arthur Funk is Wexford's Northern Illinois Regional Medical Director. (*Id.* ¶ 50.) In that role, Dr. Funk is familiar with the medical treatment provided by Wexford personnel at IDOC prisons, including Stateville. (*Id.*)

For non-emergent conditions, inmates at IDOC prisons submit a written sick call request slip or sign up for sick call on an available clipboard. (*Id.* ¶ 51.) Pursuant to IDOC protocol, Wexford physicians, nurse practitioners, and physician assistants do not personally review written requests for medical attention. (*Id.* ¶ 52.) Instead, any such written requests are typically screened and triaged by IDOC-employed nurses who decide, consistent with nursing protocols developed by IDOC, what action should be taken regarding the inmate's request for medical attention. (*Id.*) Each provider employed by Wexford has independent medical autonomy in the treatment of patients based on their independent medical judgment, taking into consideration each patient's unique clinical picture. (*Id.* ¶ 53.)

Dr. Funk opined that a "step-wise, non-surgical approach" is consistent with the community standard of care for management of low back pain such as that of plaintiff. (*Id.* ¶ 54.) Since plaintiff's fall from his bunk in February 2019, and throughout his treatment, plaintiff reported minimally symptomatic low back pain with sciatica. (*Id.* ¶ 55.) Plaintiff received patient education from his providers on the signs and symptoms of the progression of his low back pain and was consistently instructed to return to the Healthcare Unit on an as-needed basis. (*Id.* ¶ 56.)

Dr. Funk opined that based on plaintiff's medical records, his medical presentation, and reporting from the time plaintiff fell from his bunk in February

2019 to the time he was transferred from Stateville in March 2021, additional imaging such as an MRI or a surgical consultation was not necessary, as plaintiff had not exhausted the conservative treatment options for his occasional back pain with sciatica. (*Id.* ¶ 57.) Dr. Funk did not see any medical evidence that Dr. Bautista delayed, denied, or refused any medically necessary care for plaintiff. (*Id.* ¶ 58.) Dr. Funk did not find any verifiable medical evidence that Dr. Bautista or any other Wexford physician or medical provider, ever delayed, denied, or withheld any reasonable or necessary medical care to Plaintiff for treatment of his minimally symptomatic low back pain with sciatica. (*Id.* ¶ 59.)

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine when a genuine dispute of material fact exists, the Court must assess the evidence in the record as presented in depositions, documents, affidavits or declarations, and other materials. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992).

The parties seeking summary judgment bear the initial burden of showing the grounds for their motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once they have done so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "A genuine issue of material fact exists only if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v.*

10

*Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The Court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.* However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

## **ANALYSIS**

Defendants argue that they are entitled to summary judgment on all claims because: (1) plaintiff failed to exhaust his administrative remedies; (2) plaintiff has not brought forth sufficient evidence to support the required elements of his deliberate indifference claim against Dr. Bautista; and (3) plaintiff failed to support his medical negligence claims with the physician's report required by Illinois law, 735 ILCS § 5/2-622.

11

## A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act requires an inmate who brings a civil rights complaint to first exhaust his available administrative remedies within the correctional system. 42 U.S.C. § 1997e(a); *see*, *e.g.*, *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022); *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). This requirement is mandatory; "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). To fulfill the exhaustion requirement, an inmate must comply with the procedures and deadlines established by the correctional facility's policies. *Crouch*, 27 F.4th at 1320; *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Because failure to exhaust is an affirmative defense, the burden is on the defendant to prove that the plaintiff failed to exhaust an available administrative remedy. *Crouch*, 27 F. 4th at 1320; *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

Illinois regulations provide that grievances "shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." Ill. Admin. Code tit. 20, § 504.810(c). If the prisoner does not know the names of the individuals involved, he must "include as much descriptive information about the individual as possible." *Id.* The requirement to provide a description of what happened, when and where it happened, and identifying information for the people involved is printed on the grievance form. (*See* Grievance No. 11182, Dkt. No. 69-5, at pg. 1.) Defendants, citing this regulation, argue that the only grievance Plaintiff has identified in connection with this case was insufficient to

alert prison officials that plaintiff was complaining about the quality of his care by Dr. Bautista. (Defs.' Mem., Dkt. 67 at pgs. 7–8.)

The purpose of the exhaustion requirement is to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit. *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). While Illinois regulations are not precise about the level of factual detail required, a grievance generally suffices if it "alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). This does not require an inmate to provide specific facts or articulate legal theories. *Id.* Rather, the prisoner must simply "object intelligibly to some asserted shortcoming." *Id.*; *see also Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (grievance serves its function when it gives prison officials "a fair opportunity" to address complaint).

The record reflects that the only grievance plaintiff filed in connection with this case did not name Dr. Bautista or Wexford. (*See* Grievance Form, Dkt. 69-5.) More importantly, it did not complain that plaintiff failed to receive appropriate medical treatment after he fell out of his bunk. *Id.* Rather, while the grievance mentions having been taken to the Healthcare Unit for treatment, the focus of plaintiff's complaint is on his allegation that IDOC officers knew that he was not supposed to be assigned to a top bunk and should have called the Placement Office to confirm this. *Id.*

Plaintiff's responsive materials do not meaningfully address Defendants' argument that the content of his grievance was insufficient to alert prison officials to his complaint about Dr. Bautista's care. Rather, Plaintiff simply outlines the steps that he took to exhaust his grievance. (*See* Pl.'s Resp., Dkt. No. 72 at pg. 6.) Plaintiff acknowledged during his deposition that the relevant grievance did not complain that he failed to receive appropriate medical care after he fell out of the bunk. (*See* Pl.'s Dep., Dkt. No. 69-4, at 79:2–81:9.) Plaintiff's grievance, therefore, did not intelligibly convey a shortcoming with Dr. Bautista's treatment.

For this reason, defendants are entitled to summary judgment on exhaustion grounds. *See Shipp v. Lobenstein*, Appeal No. 23-1923, 2023 WL 8868501, at *2 (7th Cir. Dec. 22, 2023) (unreported) (prisoner failed to exhaust his administrative remedies where grievance did not give notice that prisoner believed his transfer was retaliatory); *Al-Kassar v. McGee*, No. 21-cv-01211, 2024 WL 578712, at *5 (S.D. Ill. Feb. 13, 2024) (grievance and appeals that focused on need to identify individual who hurt prisoner, rather than alleged denial of medical care, were insufficient to exhaust medical deliberate indifference claim); *Bray v. Fordson*, No. 3:21-CV-191, 2022 WL 2905227, at *4 (S.D. Ill. July 22, 2022) (grievance that did "not even remotely suggest" that prisoner was complaining about an officer's failure to protect him was insufficient to exhaust that claim).

## B. Deliberate Indifference Claim Against Dr. Bautista

For the sake of completeness, the Court also addresses the merits of plaintiff's claims. To prevail on a claim of medical deliberate indifference, a prisoner must bring

14

forward evidence that: (1) he suffers from an objectively serious medical condition; and (2) the defendant knew about his condition and the risk that it posed, but disregarded that risk. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). This requires more than negligence or malpractice. *Id.* Rather, deliberate indifference may occur when a prison health care provider ignores a request for medical care or when the provider's decisions substantially depart from accepted professional judgment. *Petties v. Carter*, 836 F.3d 722, 728–29 (7th Cir. 2016). A substantial departure may occur when a doctor fails to follow recommendations from a specialist, fails to follow existing protocol, persists with a course of treatment that is ineffective, or inexplicably delays treatment with no penological purpose. *Id.* at 729–30.

While Dr. Bautista takes the position that plaintiff's lower back pain was not an objectively serious medical condition, the bulk of his argument focuses on the lack of evidence to support the subjective prong of the deliberate indifference inquiry. Given that plaintiff received medication and physical therapy for the purpose of treating his lower back, the Court will assume it to have been an objectively serious medical condition. *See Pyles,* 771 F.3d at 409 ("A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson.").

Plaintiff, however, has not come forward with evidence that Dr. Bautista was deliberately indifferent to his lower back pain. Plaintiff points to an MRI of his lumbar spine taken in February 2023, which showed severe degenerative change of the L5-S1 disc space and adjacent endplates with bone marrow changes concerning

15

for discitis.[5] (*See* Dkt. No. 71 at pgs. 1, 13.) Plaintiff apparently contends that Dr. Bautista was deliberately indifferent because he failed to refer plaintiff for an MRI. If he had done so, plaintiff believes that he could have already had surgery or injections to address his lower back pain. (*See* Dkt. No. 72 at pg. 5; *see also* Pl.'s Dep., Dkt. No. 69-4, at 95:7–23.)

"An MRI is simply a diagnostic tool, and the decision to forego diagnostic tests is a classic example of a matter for medical judgment." *Pyles*, 771 F.3d at 411 (cleaned up). This means that plaintiff is obligated to come forward with evidence from which a jury could find that Dr. Bautista's exercise of medical judgment in deciding not to order an MRI "departed significantly from accepted professional norms." *Id.*; *see also Lloyd v. Moats*, 721 F. App'x 490, 494 (7th Cir. 2017) (unpublished) (delay in ordering tests must be evaluated in light of the entire record to determine if it indicates deliberate indifference). Plaintiff has not done so.

Here, the record shows that Dr. Bautista treated Plaintiff five times for his complaints of lower back pain between July 3, 2019, and January 27, 2020. Dr. Bautista diagnosed plaintiff with low back pain with sciatica, prescribed pain medication and a muscle relaxer, and referred him to physical therapy. When plaintiff complained that the pain medication was not lasting long enough to control his pain, Dr. Bautista increased the dosage. Plaintiff reported to Dr. Bautista that the physical therapy had loosened his back. There is no evidence that Dr. Bautista failed to follow existing protocol, persisted with a course of treatment that was

---

[5] Plaintiff testified that discitis, or an infection of the disc space between the vertebrae, was later ruled out. (*See* Pl.'s Dep., Dkt. No. 69-4, at 101:7-16.)

ineffective, or inexplicably delayed treatment. Rather, the only evidence in the record is that Dr. Bautista provided conservative treatment for low back pain with sciatica that was consistent with the standard of care. Plaintiff concedes that he has "progressively worsening chronic back pain." (*See* Dkt. No. 72 at pg. 3.) That an MRI *more than three years* after Dr. Bautista last treated Plaintiff for lower back pain showed degenerative changes that may require surgery or injections does not indicate deliberate indifference.

In this regard, "an inmate is not entitled to demand specific care," and medical professionals may choose from a range of acceptable options. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019); *see also Lloyd,* 721 F. App'x at 494–95 (prisoner's disagreement with course of treatment does not show deliberate indifference); *Peate v. McCann,* 294 F.3d 879, 882 (7th Cir. 2002) (observing that "mere failure . . . to choose the best course of action" does not violate the Constitution). Doctors' treatment decisions are entitled to deference "unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (cleaned up). Plaintiff points to no such evidence.

Finally, when an inmate brings a deliberate indifference claim based on delays in treatment, he must point to "verifying medical evidence" that the delay, rather than the underlying condition, caused him harm. *See McMillen v. Wexford Health Sources, Inc.*, Appeal No. 23-1836, 2025 WL 2543981, at *2 (7th Cir. Sept. 4, 2025) (unreported) (citing *Arce v. Wexford Health Sources, Inc.*, 75 F.4th 673, 680 (7th Cir.

2023)). This means evidence that tends to confirm or corroborate a claim that the delay was detrimental. *Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007). A plaintiff's own testimony that he experienced untreated symptoms during the delay does not suffice. *Lisle v. Eovaldi*, No. 16-cv-00422, 2020 WL 1287947, at *7 (S.D. Ill. Mar. 18, 2020) (citing *Johnson v. Obaisi*, No. 16-cv-4046, 2020 WL 433872, at *7 (N.D. Ill. Jan. 28, 2020)). Plaintiff points to nothing in his medical records that indicates the treatment decisions by Dr. Bautista were detrimental or that a delay in receiving an MRI caused him harm.

For these reasons, Dr. Bautista is entitled to summary judgment on the merits of Plaintiff's deliberate indifference claim.

## C. Medical Negligence Claims[6]

In allowing plaintiff's medical negligence claims to proceed at screening, Judge Blakey instructed plaintiff that, when bringing a claim for medical negligence under Illinois law, the Healing Art Malpractice Act, 735 ILCS § 5/2-622(a), requires a plaintiff to file a physician's statement attesting that the medical negligence claim has merit. (Dkt. No. 20 at pg. 4.) He warned plaintiff that failure to file such a report by the summary judgment stage may result in dismissal of such a claim. *Young v. United States*, 942 F.3d 349, 351–52 (7th Cir. 2019).

---

[6] The Court is exercising supplemental jurisdiction over this claim. *See* 28 U.S.C. § 1367(a). Generally, when all federal claims are dismissed before trial, the presumption is that the court will relinquish jurisdiction over any supplemental state-law claims. *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479–80 (7th Cir. 2012). That presumption may be overcome when substantial judicial resources already have been committed to the claim or when the disposition of the claim is "absolutely clear." *See id.* at 480. Both circumstances apply here, so the Court will not relinquish jurisdiction over this claim.

Plaintiff's only attempt to comply with this requirement was to sign the February 21, 2023 MRI report, label it "Physician Report and Affidavit," and have it notarized. (*See* Dkt. No. 71 at pgs. 14–15.) This does not comply with the statute, which requires an affidavit supported by a physician's report indicating that "there is a reasonable and meritorious cause" for litigation. *Young*, 942 F.3d at 350 (citing 735 ILCS 5/2-622). In *Young*, the Seventh Circuit rejected an argument that medical records themselves can suffice to meet this requirement. *See id.* at 352.

The medical records at issue in that case did not comply with the statute because they did not indicate that the doctors making the records had reviewed all of plaintiff's medical records, that there was a "reasonable and meritorious cause" for filing a medical malpractice action, or the reasons for such a conclusion. *Id*; *see also Ortiz v. United States*, No. 13 C 7626, 2014 WL 642426, at *3 (N.D. Ill. Feb. 19, 2014) (collecting Illinois cases and observing that the report "must describe both the deficiencies in medical care that gave rise to the plaintiff's claim and the reviewing professional's reasoning" and "must state either the standard of care or an appropriate alterative course of treatment"). The MRI report signed by plaintiff does not satisfy the requirements of the statute. Defendants therefore are entitled to summary judgment on this claim as well.

\* \* \*

For all of the foregoing reasons, defendants' motion for summary judgment is granted in its entirety. Final judgment will be entered. If plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of

judgment. *See* Fed. R. App. P. 4(a)(1). If plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Ibid.* If plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

## CONCLUSION

Defendants' motion for summary judgment [67] is granted. The Clerk is directed to: (1) correct Dr. Bautista's name on the docket; and (2) enter final judgment and send a copy of this order to Plaintiff. Civil case terminated.

DATE: 11/3/25

_____
Georgia N. Alexakis
United States District Judge